Brette L. Evans, sbn 177042
Kelly L. Klokow, sbn 280316
1150 N. First St., Ste 110
San Jose, California 95112
Telephone: 408-298-8910
Facsimile: 408-298-8911
Attorney for Defendant
*David Small*

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | CASE NO. 18-51668 MEH |
| DAVID K. SMALL and TRUDY V. SMALL, | CHAPTER 7 |
| Debtors. | ADV. CASE NO. 18-05046 |
| GRANT SEDGWICK, | **DEFENDANT'S PRE-TRIAL CONFERENCE STATEMENT** |
| Plaintiff, | |
| v. | |
| DAVID K. SMALL, | |
| Defendant. | |

**A.  The following facts are admitted and require no proof.**

1. Kimball Small (KS) was the Father of the Defendant, David Small.

2. KS was the owner of Kimball Small Properties, Inc. (KSP, Inc.)

3. KS is the sole owner of an entity name SVFC A.

4. SVFC A and Chardonnay Associates II ("Chardonnay") were the general partners Block 4 Retail Partners.

5. David Small was an employee of KSP, Inc.

6. Block 5 Retail Partners was a California Partnership that was owned 50/50 by Chardonnay and SFC Block 5 Retail Associates.

7. Kimball Small, as sole owner of SFC Properties, Inc, was General Partner of SFC Associates V, holding a 65% interest.

1

8. KSP, Inc. was the Property Manager for Block 5.

9. Grant Sedgwick acquired his interest in Block 5 as a limited partner in 1989.

10. Chardonnay and SFC Block 5 Retail Associates entered into a General Partnership Agreement dated January 1, 1991.

11. Chardonnay and SFC Block 5 Retail Associates ("SFC Associates") each owned a 50% interest in the Block 5 Retail Partners ("Block 5 Retail").

12. Block 5 retail held the ground lease interest concerning the Block 5 Retail Shells, which related to the retail on the ground portion beneath the apartments above.

13. The ground lease interest held by Block 5 generated monthly lease rents of approximately $35,000.

14. Prior to acquiring an interest as a limited partner in SFC Associates, Grant Sedgwick worked for KSP, Inc. and KS for a period of years. He held a position of President of KSP, Inc. for a period of time.

15. Grant Sedgwick contributed nominal sums ($15.00) and his work effort, to acquire his 15% limited partnership interest in SFC Assoc.

16. Through the years that Grant Sedgwick worked as President for KSP, David Small was a student.

17. David Small worked for KSP, Inc. as his first full time job after he graduated from college.

18. David Small was not always paid as an employee.

19. David Small was not an owner of KSP, Inc. or director of KSP, Inc.

20. David Small was not owner, partner or director of SFC Associates.

21. David Small was not an owner, partner or director of the SFC Associates 5.

22. David Small's only connection with the entities that controlled the Sedgwick limited partnership interest was as an employee of KSP, Inc.

23. Over a period of approximately two years (2009 - 2010), KSP, Inc. the property manager of Block 5 Retail, took loans from Block 5 Retail totaling $469,455 (the "Block 5 Retail Loans").

24. Loans were also taken from Block 4 Retail.

25. The Block 5 Retail Loans were used by KS and KSP, Inc. to support activity in a multitude of other KS and KSP businesses.

26. KSP, Inc had two employees during the period of time that the loans were taken. David Small and the CFO, Ron Havener.

27. Block 5 Retail had no employees.

28. SFC Associates had no employees.

29. David Small and Ron Havener worked directly for KS.

30. KS and David Small had signature authority for the Block 5 business bank account.

31. From time to time, when KS was out of the office, at the behest of Ron Havener and KS, David Small would sign various Block 5 checks from its bank account.

32. Sometime in end of 2011, the management of Chardonnay discovered the loans taken from Block 5 and Block 4 by KS, KSP, Inc.

33. The Block 5 general partners tasked their employees Bret Sisney and David Small to assist them in resolving the issue of the loans amongst the partners.

34. Chardonnay thereafter acquired the Block 5 Retail Partnership interest of SFC Associates through an assignment agreement signed by KS, as the President of General Partner of SFC Associates.

35. Once the assignment of the SFC Associates assets was complete (Ground Lease, Block 5 Shells), the 15% limited partnership interest held by the Plaintiff was valueless, as the assets had been assigned to Chardonnay.

36. The assignment also included KS interest held in Block 4 North, which was held through the entity SVFC A.

37. As the loans taken by KS and KSP, Inc from Block 4 and Block 5 were in excess of the KS interest in those projects, KS contributed an interest in a third project, Block 4 North.

38. Block 4 North interest was held by the entity SVFC A.

39. A final $50,000 payment was made to SVFC A by Block V to reconcile the final accounting for the interests acquired by Chardonnay.

40. Grant Sedgwick pursued collection of the alleged lost limited partnership interest for a period of years.

41. Grant Sedgwick, as a limited partner of SFC Associates, believed that he should have been consulted prior to the assignment of SFC Associates interest held in the Block 5 Retail partnership.

42. After the assignment of the SFC Associates interest to Chardonnay, Grant Sedgwick decided that Chardonnay had acquired his interest, wrongfully.

43. Grant Sedgwick ultimately sued Chardonnay for the receipt and failure to acknowledge that they had acquired his partnership interest.

44. Chardonnay did settle with Grant Sedgwick for the approximate amount of $50,000.

45. Grant Sedgwick estimated the value that he was owed to be $113,567.

46. Sometime in 2012, General partner Kimball Small represented to Chardonnay II he would resolve this matter with his own limited partner(s).

4

47. Grant Sedgwick did reach a settlement agreement with general partner Kimball Small with assignment of a $120,000 Resort Equities note.

48. Kimball Small failed to complete the settlement transaction in 2013.

49. Kimball Small was admitted to a facility for dementia and Alzeimers in 2013.

50. Kimball Small is still in the dementia/Alzeimers care facility.

51. During the period of years before the SFC Associates interest in the Block 5 Retail Partnership was sold to Chardonnay, Kimball Small's girlfriend, Marilyn Newton, assisted him with his business affairs.

52. Marilyn Newton kept all of the records for the KS businesses and enterprises after he was admitted to the dementia/Alzeimers care facility.

53. Marilyn Newton assisted KS with his personal and business affairs and communicated with Grant Sedgwick on behalf of KS.

54. Grant Sedgwick was never a creditor of either Block 5 Retail or SFC Associates prior to the time that the transfer/sale was made to Chardonnay of SFC Associates interest in Block 5 Retail.

55. KSP Owner/Block 5 General Partner and KSP CFO did receive funds on this matter at a time when DKS was not paid.

56. Grant Sedgwick received a judgment against Kimball Small in the amount of $207,000 sometime in March of 2017.

57. Block 5 Retail Partners was not insolvent when it was transferred to Chardonnay.

58. SFC Associates was not insolvent when its' interest in Block 5 Retail was acquired by Chardonnay.

59. After Chardonnay acquired SFC Associates interest in Block 5 Retail, SFC Associates was left with no assets.

5

60. The Limited Partners of SFC Assoc. were not involved in the transfer of the SFC Associates interest in Block 5 Retail to Chardonnay.

61. On or about March 2017, David Small did sign a stipulated settlement agreement with Grant Sedgwick where he agreed to repay a sum of $130,000.

62. Grant Sedgwick owned a company, US Data Port, that shared offices under a sublease with KSP, Inc.

63. US Data Port failed to pay its share of the rent estimated to be $107,000 owing under the sublease to KSP, Inc.

**B.　The following issues of fact, and no other, remain to be litigated**

1. Were the loans taken by KS and KS, Inc. actually funds that were embezzled from Block 5 Retail such that Grant Sedgwick was thereafter deprived of his proportionate share as a limited partner of SFC Associates?

2. Was David Small a de factor general partner of SFC Properties, Inc.?

3. Were the loans taken from Block 5 Retail the loans of Kimball Small, or KS, Inc., or were they loans taken by David Small personally?

4. Did David Small sell the interest held by Grant Sedgwick in SFC Associates in order to pay back his debt?

5. Where did the extra $50,000 go, after the sale of SFC Associates interest in Block 5 Retail?

6. How do we value any interest that Grant Sedgwick claims that he is still owed?

7. Is it appropriate to revalue the sale of the assets that SFC Associates held in Block 5 Retail in order to recalculate the interest that Grant Sedgwick claims that he is owed, as a measure of damages in the bankruptcy court?

6

Case: 18-05046    Doc# 21    Filed: 05/02/19    Entered: 05/02/19 18:35:12    Page 6 of 10

8. Has Grant Sedgwick received sufficient funds through litigation and settlement of other defendants such that his claims against this Defendant are not well supported?

9. Did David Small transfer $50,000 of money that was received by KS, and KS, Inc. from the sale to Chardonnay to an entity which he held and controlled?

**C.  The following issues of law, and no other, remain to be litigated.**

1. Was there an express trust that predated the alleged debt, as defined under California law?

2. Was David Small a fiduciary to support an action under Section 523(a)(4)?

3. Was there an express or technical trust relationship that existed between David Small and Grant Sedgwick?

4. Were there circumstances indicating fraud in any of the loans taken by KS, KSP, Inc., or David Small as his agent?

5. Was there a felonious taking of personal property of Grant Sedgwick taken with the intent to deprive him of his rightful ownership of that property?

6. Did David Small act with actionable malice toward Grant Sedgwick related to the sale and transfer of the SFC Associates assets?

7. Were David Small's acts willful?

8. Has the Plaintiff pled fraud with particularity as required under Federal pleading standards?

9. Were there intervening acts of causation such that David's Smalls acts were not the proximate cause of the damages to which Grant Sedgwick claims that he suffers?

10. Are the damages claimed by Grant Sedgwick speculative?

11. Did David Small follow the direction of his Father, Kimball Small, acting in good faith following his direction such that he cannot be found to have intentionally defrauded the Plaintiff.

12. Was there a common practice over a period of years where loans were taken and then put back that would obviate any allegation of fraud or malicious taking?

13. Does the Plaintiff have unclean hands, in that he knows that David Small is not liable, but has chosen to sue him for the purpose of gaining yet another settlement?

**D. <u>The appropriate measure of damages is:</u>**

   1. According to the Defendant, nothing.

   2. Defendant shall claim attorneys' fees owing if he prevails, subject to proof.

**E. <u>The DKS witnesses to be called at trial:</u>**

    1. David Small and Grant Sedgwick.

**F. <u>Exchange of Non-Testimonial Evidence</u>**

   The parties have exchanged non-testimonial evidence.

**G. Stipulations: none**

**H. Objections to Documents: None**

**I. Other Matters that Might Affect Trial**

   Plaintiff seems to want the bankruptcy court to reassess damages, and to find that the Defendant is liable for an amount greater than the judgment that he received from State Court. Plaintiff has witnesses on his witness list that seem to be testifying for the purpose of obtaining a judgment from the bankruptcy court for a larger damage amount than the judgment that already exists that derives from the same set of facts. It appears that the Rooker-Feldman doctrine would preclude this.

**J. List of Exhibits**

**<u>Defendant's Exhibits</u>**

A.   Chart of Corporate Structure

B.   Email 3/17/2011 re Cap Rates, Vacancy and Value b/w Sisney/Small

8

C. Email 5/31/2011 from David Small to Brett Sisney

D. Email 6/1/11 from David Small to Brett Sisney

E. Corporate Settlement Chart with Block 4 and Block 5

F. Email 9/8/2011 Small/Sisney re valuation B4, B5

G. Email 9/14/11 from David Small to Brett Sisney

H. Email 9/15/11 from Barry Fernald to David Small

(includes Email 9/15/11 from David Small to Brett Sisney)

I. Email 1/19/12 – 1/25/12 Sedgwick, Small, Havner

J. Assignment of Partnership Interest Document, Block 5

K. Wells Fargo Bank Transfer Document, Block 5, $50,000

L. Block 5 Retail Partners Statement 10/11 (XXX4910)

Dated 10/27/2011, Stmt 10/1/11

M. SFC Block 5 Associates Statement, 10/2011 (XXX3210)

N. Email from Marilyn Newton to Sedgwick, 3/4/13

O. Email from Sedgwick to Marilyn Newton, 3/21/13

P. Letter from Sedgwick to Fernald & Filizetti, 7/28/14

Q. Email Sedgwick to Filizetti, Fernald, Sisney, 8/25 – 9/23/14

(3 pages)

R Block 5 Retail Partners Balance Sheet, 10/31/2010

S. Agreement for Sale and Transfer of Partnership Interests

T. General Partnership Agreement of Block 5 Retail Partners

U. Limited Partnership Agreement, SFC Associates V.

V. First Amendment to Limited Partnership Agreement, 4/3/89

W. Second Amendment to Limited Partnership Agreement, 12/20/89

9

X. Stipulation for Entry of Judgment, Sedgwick v. Small, 3/9/17

Y. B5 Advances per CFO

Z. Financials for SFC Block 5 Retail Associates

AA. Financials for SFC Properties, Inc

BB. *Financials for Kimball Small Properties, Inc.*

**Binder II**

Deposition of Grant Sedgwick

**Binder III**

Deposition of Bret Sisney

Dated: May _2_, 2019

                                EVANS LAW OFFICES

                                /s/ Brette L. Evans
                                Brette L. Evans, Esq.
                                Attorney for David Small